IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MOHAMAD ELOUARRAK on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) 1:19-cv-03666 ) ) |
| v. | ) ) |
| FIRSTSOURCE ADVANTAGE, LLC, | ) ) |
| Defendant. | ) |

## COMPLAINT – CLASS ACTION

NOW COMES the Plaintiff, MOHAMAD ELOUARRAK, by and through his attorneys, SMITHMARCO, P.C., and JOHNSTON TOMEI LENCZYCKI & GOLDBERG, LLC, suing on behalf of himself and all other similarly situated, and for his complaint against the Defendant, FIRSTSOURCE ADVANTAGE, LLC, Plaintiff states as follows:

### I. PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §1692, et seq.

### II. JURISDICTION & VENUE

2. Jurisdiction arises under the FDCPA, 15 U.S.C. §1692 et seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III. PARTIES

4. MOHAMAD ELOUARRAK, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Waukegan, County of Lake, State of Illinois.

5. The debt that Plaintiff was allegedly obligated to pay was a debt allegedly owed by Plaintiff to American Express (hereinafter, "the Debt").

6. The debt that Plaintiff allegedly owed American Express was for a credit card, on which charges were incurred primarily for the personal use of Plaintiff and/or for household expenditure.

7. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

8. FIRSTSOURCE ADVANTAGE, LLC, (hereinafter, "Defendant") is a business entity engaged in the collection of debt within the State of Illinois. Defendant's principal place of business is located in the State of New York. Defendant is registered as a limited liability company in the State of Illinois.

9. The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

10. Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties.

11. During the course of its efforts to collect debts allegedly owed to third parties, Defendant sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

12. At all relevant times, Defendant acted as a debt collector as that term is defined by 15 U.S.C. §1692a(6).

13. At all relevant times, Defendant acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

### IV. GENERAL ALLEGATIONS

14. In January of 2019, Plaintiff received a letter purporting to be from "American Express Global Solutions," offering to "settle" the Debt for 55% of the balanced claimed to be outstanding (hereinafter, the "January Letter"). A true and exact copy of the January Letter is attached hereto as **Exhibit A**.

15. The January Letter was dated January 4, 2019.

16. The January Letter contained the American Express logo in the upper left-hand corner, next to a return address, which reads:

> American Express
> P.O. Box 6985
> Buffalo, NY 14240-6985

17. In multiple sections of the January Letter, the drafter of the letter requested that Plaintiff call 1-855-618-2435.

18. In February of 2019, Plaintiff received a second correspondence purporting to be from "American Express Global Collections," this time offering to "settle" the Debt for 45% of the balance claimed to be outstanding (hereinafter, the "February Letter"). A true and exact copy of the February Letter is attached hereto as **Exhibit B**.

19. The February Letter was dated February 12, 2019.

20. The February Letter contained the American Express logo in the upper left-hand corner, next to a return address, which reads:

>American Express
>P.O. Box 6985
>Buffalo, NY 14240-6985

21. In multiple sections of the February Letter, the drafter of the letter requested that Plaintiff call 1-844-554-6701.

22. In or around March of 2019, Plaintiff received a third correspondence purporting to be from "American Express Global Collections," this time offering to "settle" the Debt for 65% of the balance claimed to be outstanding (hereinafter, the "March Letter"). A true and exact copy of the March Letter is attached hereto as **Exhibit C**.

23. The March Letter was dated March 29, 2019.

24. The March Letter contained the American Express logo in the upper left-hand corner, next to a return address, which reads:

>American Express
>P.O. Box 6985
>Buffalo, NY 14240-6985

25. In multiple sections of the March Letter, the drafter of the letter requested that Plaintiff call 1-844-554-6701.

26. American Express has registered more than two hundred (200) trademarks with the United States Patent and Trademark Office.

27. American Express has never registered a trademark for "American Express Global Collections."

28. American Express maintains its headquarters in New York and has registered numerous business entities in the State of New York.

29. American Express Global Collections has never been registered as a business entity in the State of New York.

30. American Express does not maintain or receive mail at P.O. Box 6985, Buffalo, NY 14240-6985.

31. Defendant maintains and receives mail at P.O. Box 6985, Buffalo, NY 14240-6985.

32. American Express does not operate or receive telephone calls directed to telephone number 1-855-618-2435.

33. Defendant exclusively operates and receives telephone calls directed to telephone number 1-855-618-2435.

34. Defendant uses telephone number 1-855-618-2435 exclusively for collection on accounts for American Express.

35. American Express does not operate or receive telephone calls directed to telephone number 1-844-554-6701.

36. Defendant exclusively operates and receives telephone calls directed to telephone number 1-844-554-6701.

37. Defendant uses telephone number 1-844-554-6701 exclusively for collection on accounts for American Express.

38. In Illinois, a breach of contract claim based on an unwritten contract must be brought within five (5) years. 735 ILCS 5/13-205. The Debt relates to a contract for a consumer line of credit, which is subject to the five-year statute of limitations for unwritten contracts. *See Portfolio Acquisitions, LLC v. Feltman*, 391 Ill. App. 3d 642 (1st Dist. 2009)

39. Plaintiff has not made a payment toward the Debt in more than ten (10) years prior to January 4, 2019.

40. As such, the Debt is no longer legally enforceable because the statute of limitations to file a breach of contract claim against Plaintiff has expired.

41. If the January Letter, February Letter, or March Letter were sent by a debt collector regulated by the FDCPA, the aforesaid correspondences would have violated the FDCPA.

42. If a consumer receives an "offer for settlement" and searches on Google to see what is meant by "settlement," she might find the Wikipedia entry for "settlement offer." Settlement offer, WIKIPEDIA, http://en.wikipedia.org/wiki/Settlement_offer. There she would learn that the term "offer to settle" is "used in a civil lawsuit to describe a communication from one party to the other suggesting a settlement—an agreement to end the lawsuit before a judgment is rendered. *See McMahon v. LVNV Funding,* 744 F.3d 1010 (2014).

43. When a debt collector uses language in its dunning letter to a consumer that would mislead an unsophisticated consumer into believing that the debt is legally enforceable, regardless of whether the letter actually threatens litigation, the collector has violated the FDCPA, because it is plausible that an unsophisticated consumer would believe a letter that offers to "settle" a debt implies that the debt is legally enforceable. *See McMahon v. LVNV Funding,* 744 F.3d 1010 (2014).

44. American Express and Defendant have jointly developed and implemented a collection strategy specifically designed to avoid compliance with the FDCPA by creating an appearance that consumers are communicating with American Express, which is not regulated by the FDCPA, when in fact such consumers are unwittingly communicating with Defendant.

45. Upon information and belief, as part of the aforesaid collection strategy, American Express uses a third-party vendor to send form letters such as the January Letter, February Letter, and March Letter, that are signed by "American Express Global Collections" and use a return address and telephone number belonging to Defendant.

46. By utilizing a third-party vendor to send the form letters instead of Defendant, American Express seeks to exculpate Defendant from liability for any violations of the FDCPA contained within those letters, despite the fact that American Express and Defendant have developed and implemented the collection strategy and the letters contain contact information for Defendant.

47. These form letters are deceptive and/or misleading, including by offering to settle a time-barred debt without disclosing that such debt is not legally enforceable, but because American Express is not a debt collector, consumers are unable to invoke the protections of the FDCPA.

48. When consumers send correspondence to the return address listed on the letters, that correspondence is received by Defendant, not American Express.

49. When consumers call the telephone number listed on the letters, the calls are answered by Defendant, not American Express.

50. When Defendant answers telephone calls to the telephone numbers listed on the letters, Defendant identifies itself as "American Express" or "American Express Global Collections."

51. When Defendant answers telephone calls to the telephone numbers listed on the letters, it masquerades as American Express and does not comply with the requirements of the FDCPA.

52. After receiving the January Letter, February Letter, and March Letter, Plaintiff called the listed telephone numbers. Defendant answered Plaintiff's telephone calls, identifying itself as "American Express Global Collections."

53. During the aforesaid telephone calls, Defendant failed to provide its true identity, FIRSTSOURCE ADVANTAGE, LLC.

54. During the aforesaid telephone calls, Defendant failed to state that it was a debt collector attempting to collect a debt, and that any information obtained would be used for that purpose.

### V.   DEFENDANT'S VIOLATIONS OF THE FDCPA

55. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs in this Complaint as though fully set forth herein.

56. In its attempts to collect the debt allegedly owed by Plaintiff, Defendant violated the FDCPA, 15 U.S.C. §1692 in one or more of the following ways:

   a. Engaged in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt in violation of 15 U.S.C. §1692d;

   b. Placed a telephone call to a consumer without meaningful disclosure of the caller's identity in violation of 15 U.S.C. §1692d(6);

   c. Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;

   d. Failed to disclose in communications that said communication was from a debt collector and that any information obtained during the communication will be used for the purpose of collecting a debt in violation of 15 U.S.C. §1692e(11);

   e. Using any business, company or organization name other than the true name of the debt collector's business, company or organization in violation of 15 U.S.C. §1692e(14);

   f. Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

57. These are material violations of the FDCPA because they would lead a consumer to believe that he or she is communicating with its creditor, when in fact he or she is communicating with a debt collector that has little or no interest in maintaining the good will that

a creditor would, or that he or she did not have the rights that Congress gave them under the FDCPA. In fact, Defendant's communications with Plaintiff confused and alarmed Plaintiff as the manner in which Defendant answered the telephone calls caused Plaintiff to feel suspicious of whether he was truly speaking with American Express or whether he was being deceived by a scam.

## VI. CLASS ALLEGATIONS

58. Plaintiff brings this action individually and on behalf of a class of individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure.

59. The aforementioned class of individuals is defined as:

> All persons that, during the one (1) year period prior to the filing of this Complaint, placed a telephone call to Defendant directed to telephone numbers 1-855-618-2435 and/or 1-844-554-6701 in response to a letter or other communication substantially in the form of the January Letter, February Letter, or March Letter, during which Defendant (1) identified itself as American Express or American Express Global Collections; (2) failed to provide its true identity, FIRSTSOURCE ADVANTAGE, LLC; or (3) failed to state that it was a debt collector attempting to collect a debt and that any information obtained would be used for that purpose.

60. The class is so numerous that joinder of all members is impractical. The exact number of class members is unknown to Plaintiff at this time but can be easily ascertained through appropriate discovery.

61. The class is ascertainable in that the names and addresses of all class members can be identified in business records maintained by Defendants.

62. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. The principal question at issue is whether Defendant violated the FDCPA by masquerading as American Express during telephone calls with Class Members during the applicable time period as alleged.

63. Plaintiff's claim is typical of the claims for the Class, which arise from the same operative facts and are predicated on the same legal theories.

64. There are no individual questions of fact, other than whether a Class member placed a call to the aforesaid telephone numbers, which can be determined by a ministerial inspection of Defendant's records.

65. Plaintiff will fairly and adequately protect the interests of the class and has no interest adverse to or which directly and irrevocably conflicts with the interests of other members of the class.

66. Plaintiff is willing and prepared to serve this Court and proposed class.

67. The interests of Plaintiff are co-extensive with and not antagonistic to those of the absent class members.

68. Plaintiff has retained the services of counsel who are experienced in consumer protection claims, as well as class action litigation, will adequately prosecute this action, and will assert, protect and otherwise represent Plaintiff and all absent class members.

69. Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) and 23(b)(1)B). The prosecution of separate actions by individual members of the class would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to the action or could substantially impair or impede their ability to protect their interests.

70. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for the parties opposing the class. Such incompatible standards of conduct and varying adjudications, on what would necessarily be

the same essential facts, proof and legal theories, would also create and allow the existence of inconsistent and incompatible rights within the class.

71. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) in that Defendant has acted or refused to act on grounds generally applicable to the class, making final declaratory or injunctive relief appropriate.

72. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) in that the questions of law and fact that are common to members of the class predominate over any questions affecting only individual members.

73. Moreover, a class action is superior to other methods for the fair and efficient adjudication of the controversies raised in Plaintiff's Complaint in that:

   a. Individual claims by the class members will be impracticable as the costs of pursuit would far exceed what any one plaintiff or class member has at stake;

   b. As a result, very little litigation has been commenced over the controversies alleged in Plaintiff's Complaint and individual members are unlikely to have interest in prosecuting and controlling separate individual actions; and,

   c. The concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy.

### VII. JURY DEMAND

74. Plaintiff hereby demands a trial by jury on all issues so triable.

### VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, MOHAMAD ELOUARRAK, individually and on behalf of all others similarly situated, respectfully prays for judgment as follows:

   a. Certify the class in this matter, appoint Plaintiff as class representative and his attorneys as class counsel;

   b. Finding that Defendant violated the Fair Debt Collection Practices Act;

 c. Enter judgment in favor of Plaintiff and the Class, and against Defendant, for statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and,

 d. Awarding Plaintiff, and all others similarly situated, any other relief deemed appropriate by this Honorable Court.

            Respectfully submitted,
            **MOHAMAD ELOUARRAK**

          **By:** s/ David M. Marco
            Attorney for Plaintiff

David M. Marco
IL Bar No. 6273315/FL Bar No. 125266
SMITHMARCO, P.C.
55 W. Monroe Street, Suite 1200
Chicago, IL 60603
Telephone: (312) 546-6539
Facsimile: (888) 418-1277
E-Mail: dmarco@smithmarco.com

Robert J. Tomei Jr.
IL Bar No.: 6310339
JOHNSTON TOMEI LENCZYCKI & GOLDBERG, LLC
350 N Milwaukee Ave., Ste. 202
Libertyville, IL 60048
P: (847) 549-0600;
F: (847) 589-2263
E: Rob@LawJTLG.com