**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MOHAMAD ELOUARRAK on behalf of himself and all others similarly situated, | ) ) ) | Case No.: 1:19-cv-03666 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| FIRSTSOURCE ADVANTAGE, LLC, | ) ) ) | |
| Defendant. | ) ) ) ) | |

## MOTION OF AMERICAN EXPRESS NATIONAL BANK TO INTERVENE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 24

Pursuant to Federal Rule of Civil Procedure 24(a)(2), American Express National Bank ("American Express"), by and through its undersigned counsel, moves to intervene in this action and, in support states:

### I.        INTRODUCTION

Although plaintiff Mohamad Elouarrak ("Plaintiff") brings his claim against defendant Firstsource Advantage LLC ("Firstsource") only, his allegations are largely, and at their inception, directed at American Express. Indeed, Plaintiff's Complaint centers upon his receipt of three letters from American Express regarding his unpaid American Express card account, in which he claims American Express made "deceptive and/or misleading" statements to him. Plaintiff does not allege that Firstsource drafted or sent those letters; rather, he claims that, in connection with his response to these letters from American Express—a response that is only required if Plaintiff intended to accept American Express's account settlement offer—American Express and Firstsource jointly developed a strategy designed to avoid compliance with the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (the "FDCPA"), by creating the

appearance that consumers are communicating with American Express when they actually are communicating with Firstsource. Based on these allegations, there is no doubt that American Express possesses a significant protectable interest in defending against Plaintiff's claims, which, in truth, are directed primarily at American Express. American Express's interests unquestionably may be impaired by this action's disposition in American Express's absence. Furthermore, Plaintiff indisputably agreed to arbitrate all claims related to his American Express account, including his claim regarding American Express's letters that he purports to assert against Firstsource, pursuant to the arbitration provision (the "Arbitration Agreement") in his American Express Cardmember Agreement.

By this Motion, American Express seeks an order allowing it to intervene so that it may defend its conduct that Plaintiff expressly challenges, yet tries to exclude American Express, and compel Plaintiff to adjudicate his claims related to his American Express account in binding arbitration, pursuant to the Arbitration Agreement's express terms.[1] This Motion should be granted because it is timely, American Express has several significant protectable interests that may be impaired by this action's disposition and its interests are not adequately represented by Firstsource.

---

[1] Pursuant to Rule 24(c), American Express attaches as Exhibit 1 its Motion to Compel Arbitration and supporting Memorandum as its proposed responsive pleading in this action. District courts conclude that attaching a motion to compel arbitration to a motion to intervene satisfies the pleading requirement under Rule 24(c). See U.S. ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Marine Ins. Co., 239 F.R.D. 404, 412 (W.D. Pa. 2006) ("The Court thus finds that it has the authority to employ its discretion and consider a motion to intervene that contains no pleading, but instead includes a motion to compel arbitration and stay the proceedings."); Pro Lawns, Inc. v. Fid. & Deposit Co. of Md., No. 3:14-cv-408-WKW, 2015 WL 350637, at *3 (M.D. Ala. Jan. 23, 2015) (finding motion to compel arbitration acceptable because it was "apparent that [the proposed intervenor] intends to intervene in order to compel arbitration" and was therefore "excused from attaching a true 'pleading' to its motion to intervene"). Further, "courts often decline to apply Rule 24(c) in a needlessly technical manner in the absence of resulting prejudice." Gibralter Mausoleum Corp. v. Cedar Park Cemetery Ass'n, Inc., No. 92 C 5228, 1993 WL 135454, at *4 (N.D. Ill. Apr. 29, 1993).

- 2 -

Accordingly, American Express respectfully requests that the Court enter an order granting this Motion and allowing it to intervene.

## II.    BACKGROUND

Plaintiff filed his Complaint against Firstsource on May 31, 2019 (the "Complaint"). (ECF No. 4.)  Therein, Plaintiff concedes that he incurred a debt on an American Express card account.  (Compl. ¶¶ 5-6.)  Plaintiff claims he later received a letter from American Express, dated January 4, 2019, offering to settle his American Express account for 55% of the outstanding balance (the "January Letter").  (Id. ¶¶ 14-15.)  Plaintiff alleges he received a second letter from American Express, dated February 12, 2019, offering to settle his American Express account for 45% of the outstanding balance (the "February Letter").  (Id. ¶¶ 18-19.)  Plaintiff further alleges he received a third letter from American Express, dated March 29, 2019, offering to settle his American Express account for 65% of the outstanding balance (the "March Letter" and, collectively with the January Letter and February Letter, the "Letters").  (Id. ¶¶ 22-23.)  Plaintiff claims American Express made misleading statements to him in the Letters about his account balance because Plaintiff has not made payment on his delinquent American Express account balance in over ten years but the Letters do not disclose that the debt purportedly no longer is "legally enforceable."  (Id. ¶¶ 39, 47.)  According to Plaintiff, American Express uses a third-party letter vendor to mail the Letters, and includes a return address and telephone number on the Letters that belong to Firstsource, not American Express, purportedly in an attempt to avoid compliance with the FDCPA.  (Id. ¶¶ 44-45.)

Based on the foregoing, Plaintiff asserts one claim against Firstsource for violation of the FDCPA and seeks to represent a class of similarly-situated individuals.  (Id. ¶¶ 56, 58-73.)  On

- 3 -

July 29, 2019, Firstsource filed its Answer and Affirmative Defenses to Plaintiff's Complaint. (ECF No. 14.)

### III.     ARGUMENT

**A.     Legal Standard Governing Motions To Intervene As Of Right Under Federal Rule Of Civil Procedure 24(a)(2)**

Federal Rule of Civil Procedure 24 provides for intervention as of right as follows:

(a) Intervention of Right.  On timely motion, the court must permit anyone to intervene who:

> (1) is given an unconditional right to intervene by a federal statute; or

> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

In the Seventh Circuit, parties seeking to intervene pursuant to Rule 24(a)(2) must demonstrate that: (1) their petition to intervene is timely; (2) they possess an interest relating to the subject matter of the action; (3) there will be an impairment of that interest, practically speaking, by the disposition of the action; and (4) there is a lack of adequate representation of that interest by the existing parties.  See Reid L. v. Illinois State Bd. of Educ., 289 F.3d 1009, 1017 (7th Cir. 2002); see also Shea v. Angulo, 19 F.3d 343, 346 (7th Cir. 1994).  "A motion to intervene as a matter of right . . . should not be dismissed unless it appears to a certainty that the intervenor is not entitled to relief under any set of facts which could be proved under the complaint."  Reich v. ABC/York-Estes Corp., 64 F.3d 316, 321 (7th Cir. 1995).  Further, "[c]ourts should construe Rule 24(a)(2) liberally and should resolve doubts in favor of allowing intervention."  Michigan v. U.S. Army Corps of Engineers, No. 10-CV-4457, 2010 WL 3324698, at *2 (N.D. Ill. Aug. 20, 2010).

American Express satisfies all requirements to intervene and, accordingly, American Express must be permitted to intervene here.

- 4 -

**B.      The Motion Is Timely.**

When assessing timeliness under Rule 24(a), courts consider four factors: "(1) when the intervenor knew or should have known of his interest in the case; (2) whether the delay caused any prejudice to the original parties; (3) whether the intervenor would suffer any prejudice if his motion is denied; and (4) any [un]usual circumstances." <u>Id.</u> at *2. Courts should apply a reasonableness standard when evaluating whether a petitioner's motion to intervene is timely. <u>See</u> <u>People Who Care v. Rockford Bd. of Educ.</u>, 68 F.3d 172, 175 (7th Cir. 1995). Consideration of these factors confirms that the Motion is timely.

**1.      This Action Was Filed Only Three Months Ago.**

Plaintiff only filed his Complaint on May 31, 2019, and Firstsource filed its Answer on July 29, 2019. (ECF Nos. 4, 14.) On August 7, 2019, the Court entered an order setting forth a written discovery schedule in this action (the "Discovery Order"). (ECF No. 19.) In accordance with the Discovery Order, on August 28, 2019, the parties exchanged mandatory initial discovery responses to six requests for information pursuant to the Court's Standing Order Regarding Mandatory Initial Discovery Pilot Project. Other than that, the parties have not exchanged discovery responses and the Court has not yet made any substantive rulings.

Courts regularly find motions to intervene filed at similar, early junctures of a litigation to be timely. <u>See</u> <u>U.S. Army Corps of Engineers</u>, 2010 WL 3324698, at *3 (finding motions to intervene timely because they were filed shortly after the complaint was filed and before the court issued any substantive decisions); <u>Miami Tribe of Oklahoma v. Walden</u>, 206 F.R.D. 238, 241 (S.D. Ill. 2001) (finding motion to intervene timely filed shortly after the litigation began). Indeed, courts have found much longer periods timely, including where the proceedings were much further advanced. <u>See</u> <u>Wildcat Enterprises, LLC v. Weber</u>, No. 11-CV-4922, 2016 WL

- 5 -

8711474, at *4 (N.D. Ill. Mar. 4, 2016) (allowing movant to intervene over one year after the turnover order the movant was seeking to challenge was entered by the court). Applying these standards, the Motion is timely.

> **2.**     **The Named Parties Will Not Be Prejudiced Because There Has Been No Delay But American Express Will Be Prejudiced If It Is Not Permitted To Intervene.**

The remaining three timeliness factors all weigh heavily in favor of intervention. The named parties will not suffer any prejudice by American Express's intervention because of the very early stage of the litigation. See, e.g., Omega Demolition Corp. v. Tech. Ins. Co., Inc., No. 15-CV-5021, 2016 WL 307924, at *4 (N.D. Ill. Jan. 26, 2016) (granting motion to intervene and finding that the existing parties would suffer no prejudice because proceeding was at an early stage given that the parties had filed amended pleadings a few months before the intervention motion). By contrast, American Express will be prejudiced if this Motion is denied because it will be left with without the ability to protect its significant interests that are implicated here, as further detailed below. For this additional reason, and because there are no other unusual circumstances present that weigh against a timeliness finding, American Express submits that the Motion is very timely.

**C.**     **American Express Has A Protectable Interest In This Litigation.**

"Intervention as of right requires a 'direct, significant[,] and legally protectable' interest in the question at issue in the lawsuit." Wisconsin Educ. Ass'n Council v. Walker, 705 F.3d 640, 658 (7th Cir. 2013) (citation omitted). "That interest must be unique to the proposed intervenor." Id. Further, "[w]hether an applicant has an interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination, making comparison to other cases of limited value." Sec. Ins. Co. of Hartford v. Schipporeit, Inc., 69 F.3d 1377, 1381 (7th Cir. 1995).

- 6 -

American Express's right to intervene is clear on the face of the Complaint given that Plaintiff's allegations are largely directed at American Express and centered upon his receipt of the Letters from American Express.  Plaintiff asserts several allegations that American Express has developed and employs some collection strategy to circumvent the FDCPA.  (Compl. ¶¶ 44-47.)  These assertions are based on the content of the Letters, which came from American Express and that Plaintiff contends are "deceptive and/or misleading."  (Id. ¶ 47.)  In so alleging, Plaintiff seeks to curb American Express's ability to resolve outstanding accounts and communicate with its cardmembers to do so.  (Id. ¶¶ 30-37, 41, 45-47.)  American Express plainly has a significant protectable interest in defending against such claims.  Moreover, American Express has a further significant protectable interest in requiring Plaintiff to arbitrate those claims.  Plaintiff expressly agreed to arbitrate claims such as the ones he asserts here and, by asserting claims solely against Firstsource in litigation rather than in arbitration, Plaintiff is significantly interfering with American Express's right to have those claims arbitrated.

Plaintiff's allegations implicate other significant protectable interests belonging to American Express as well.  Plaintiff challenges American Express's business and contractual relationship with its third-party vendors, such as Firstsource, by claiming that Firstsource is involved with the Letters in a way that allegedly violated the FDCPA and purportedly conspired with American Express to circumvent the FDCPA's requirements.  (Id. ¶¶ 44, 56.)

Given the foregoing, American Express respectfully submits that it should be permitted to intervene to protect its significant interests at issue as well as enforce its contractual right to arbitrate Plaintiff's claims.

- 7 -

**D.     American Express's Ability To Protect Its Interests May Be Impeded Or Impaired By Disposition Of This Action In Its Absence.**

The Court must next consider whether American Express's ability to protect its interests would be impaired if it is not permitted to intervene in this action. "The existence of 'impairment' depends on whether the decision of a legal question involved in the action would as a practical matter foreclose rights of the proposed intervenors in a subsequent proceeding." In re Testosterone Replacement Therapy Products Liab. Litig., No. 14-CV-1748, 2018 WL 5884519, at *5 (N.D. Ill. Nov. 8, 2018) (quoting Am. Nat. Bank & Tr. Co. of Chicago v. City of Chicago, 865 F.2d 144, 147-48 (7th Cir. 1989)). There is no question that disallowing American Express to intervene would impair its ability to protect its interests.

As outlined above, Plaintiff raises serious allegations against American Express even though American Express is not a named defendant in this action. Plaintiff's allegations relate to American Express's account recovery practices, including its communications directed to Plaintiff through the Letters. (Compl. ¶¶ 14-24, 30-37, 41, 45-47.) An adverse decision on the merits could substantially impair American Express's ability to communicate with its cardmembers about their accounts in general as well as its interest in Plaintiff's American Express account, in collecting on that account and others, and in establishing that American Express properly communicated with Plaintiff and cardmembers through the Letters and otherwise. An adverse decision could also impact American Express's business and contractual relationships with its third-party vendors, including Firstsource, given Plaintiff's allegations that American Express and Firstsource conspired to circumvent the FDCPA. (Id. ¶ 44.)

Furthermore, American Express's interest in requiring arbitration of claims asserted against its third-party vendors such as Firstsource would be impaired absent intervention. As discussed above, Plaintiff expressly agreed to arbitrate claims that in any way relate to his

- 8 -

American Express account, including those against third-party vendors, like those he asserts against Firstsource. Allowing Plaintiff to assert claims against Firstsource in litigation rather than in arbitration would impair American Express's right to have those claims arbitrated.

**E.     American Express's Interests Are Not Adequately Represented By The Parties To This Action.**

The final requirement—that a prospective intervenor's interest will not be adequately represented by the existing parties—also is satisfied. "Prospective intervenors need 'only make a showing that the representation 'may be' inadequate and the burden of making that showing should be treated as minimal.'" Wildcat Enterprises, LLC v. Weber, No. 11-CV-4922, 2016 WL 8711474, at *6 (N.D. Ill. Mar. 4, 2016) (quoting Ligas ex rel. Foster v. Maram, 478 F.3d 771, 773 (7th Cir. 2007)).

American Express's interests are not adequately protected here in its absence. American Express has an interest in preserving its right to communicate and settle its accounts with its cardmembers, as well as defending its account resolution process. Firstsource has an interest in collecting debts and providing services to American Express in compliance with the FDCPA, but these are different interests. Likewise, American Express's interest in resolving outstanding accounts with its cardmembers obviously differs from, as Plaintiff alleges, Firstsource's interest in defending Plaintiff's assertion that it failed to truthfully identify itself to Plaintiff on the telephone.

American Express has an interest also in requiring arbitration of claims related to its accounts, including those asserted against third-party vendors such as Firstsource. In Atlantic Refinishing & Restoration, Inc. v. Travelers Cas. and Sur. Co. of Am., 272 F.R.D. 26 (D.D.C. 2010), a subcontractor on a government-funded restoration project brought an action against the general contractor's surety, alleging it did not receive full compensation under its subcontract

- 9 -

with the general contractor.  Id. at 27-28.  The general contractor moved to intervene, arguing that its interests were not adequately represented by the defendant surety because the subcontract, to which the surety was not a party, contained a mandatory arbitration clause.  Id. at 28.  The court agreed intervention of right was appropriate: "special circumstances exist here due to the [general contractor's] intention to enforce the subcontract's arbitration clause.  The [general contractor] has been candid about its intention, if allowed to intervene, to move this court to require the plaintiff to arbitrate this suit as purportedly required by their subcontract."  Id. at 30.  Similarly, American Express's contractual right to compel Plaintiff to arbitrate his claims may not be adequately represented by Firstsource, a non-party to the Arbitration Agreement.

## IV.    CONCLUSION

For the foregoing reasons, American Express respectfully requests that the Court grant this Motion and permit American Express to intervene as a defendant in this Action.

Respectfully submitted,

Dated: September 13, 2019.

By:  *s/ Brian C. Frontino*

Brian C. Frontino
Florida Bar No. 95200
STROOCK & STROOCK & LAVAN LLP
200 South Biscayne Boulevard, Suite 3100
Miami, Florida 33131
Telephone:  (305) 358-9900
Facsimile:  (305) 789-9302
bfrontino@stroock.com
ataormina@stroock.com
knwamah@stroock.com
lacalendar@stroock.com
Attorneys for Defendant
*Firstsource Advantage, LLC and proposed*
*intervenor American Express National Bank*

- 11 -

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via the

Court's CM/ECF system on the following counsel of record on September 13, 2019:

David M. Marco, Esq.
SMITHMARCO, P.C.
55 W. Monroe Street, Suite 1200
Chicago, IL 60603
Telephone: (312) 546-6539
Facsimile: (888) 418-1277
Email: dmarco@smithmarco.com

*Attorneys for Plaintiff*

Robert J. Tomei, Jr.
JOHNSTON TOMEI
LENCZYCKI & GOLDBERG, LLC
350 N. Milwaukee Ave., Suite 202
Libertyville, IL 60048
Telephone: (847) 549-0600
Facsimile: (847) 589-2263
Email: Rob@LawJTLG.com

*Attorneys for Plaintiff*

*/s/ Brian C. Frontino*
Brian C. Frontino

MIA 31430866