# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MOHAMAD ELOUARRAK on behalf of himself and all others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 1:19-cv-03666<br>)<br>) Judge Sharon Johnson Coleman |
| FIRSTSOURCE ADVANTAGE, LLC, | )<br>) |
| Defendant, | )<br>) |
| AMERICAN EXPRESS NATIONAL BANK, | )<br>) |
| Intervenor. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mohamad Elouarrak brings this class action against Firstsource Advantage, LLC ("Firstsource") alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Currently before the Court is non-party American Express National Bank's ("American Express") motion to intervene pursuant to Federal Rule of Civil Procedure 24(a)(2). For the reasons stated below, the Court grants American Express's motion.

**Background**

Using an American Express credit card, Elouarrak allegedly incurred a debt on his account. Subsequently, he received three letters from "American Express Global Collections," one each in January, February, and March of 2019 (collectively the "Letters"). Each Letter offered to settle Elouarrak's account for a percentage of the outstanding balance.

Elouarrak takes issue with certain aspects of the Letters. He alleges that the Letters violate the FDCPA because they fail to disclose that the debt they offer to settle is no longer legally enforceable due to the passage of time. He also alleges that the return address and telephone number on the Letters do not belong to American Express, but to Firstsource.

Firstsource, an agency which "attempts to obtain payments of debts owed," has contracted with American Express to collect debts as a third-party vendor. Elouarrak states that American Express and Firstsource "have jointly developed and implemented a collection strategy specifically designed to avoid compliance with the FDCPA." According to Elouarrak, American Express uses another third-party vendor to send the Letters, not Firstsource, to shield Firstsource from liability for FDCPA violations. In addition, Elouarrak asserts that Firstsource "masquerades as American Express" when answering phone calls to the numbers listed in the Letters by identifying itself as American Express Global Collections.

American Express moves to intervene as a matter of right, arguing that it has significant protectable interests in defending against the claims about its conduct. American Express notes the arbitration agreement it has with Elouarrak as the source of one such interest. It also identifies interests in communicating with shareholders, collecting on its accounts, and maintaining business and contractual relationships with third-party vendors such as Firstsource.

**Discussion**

As a general principle, courts construe Rule 24(a)(2) motions liberally. *See, e.g., Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 799 (7th Cir. 2019); *Lopez-Aguilar v. Marion Cty. Sheriff's Dept.*, 924 F.3d 375, 391 (7th Cir. 2019). In accordance with this liberal construction, courts "must accept as true the non-conclusory allegations of the motion" a proposed intervenor makes. *Illinois v. City of Chicago,* 912 F.3d 979, 984 (7th Cir. 2019) (citation omitted).

Under Rule 24(a)(2), "a proposed intervenor needs to meet four elements: '(1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action.'" *Planned Parenthood,* 942 F.3d at 797 (citation omitted). Because the parties do not dispute timeliness and inadequate representation,

the discussion will focus on the interest in the subject matter of the action and the potential impairment of interests.

*Interest Relating to the Subject Matter of the Action*

The second element necessary to intervene under Rule 24(a)(2) is that the proposed intervenor must have "a 'direct, significant[,] and legally protectable' interest in the question at issue in the lawsuit" and that this interest must be "unique to the proposed intervenor." *Wisconsin Educ. Ass'n Council v. Walker*, 705 F.3d 640, 658 (7th Cir. 2013) (citation omitted). A "unique" interest is "based on a right that belongs to the proposed intervenor rather than to an existing party in the suit." *Planned Parenthood,* 942 F.3d at 798 (citation omitted).

American Express claims to play an important part in this litigation. It asserts that Elouarrak's complaint is founded upon the Letters, which are from American Express, because those Letters contain the language in controversy about settling the account balance, as well as the telephone number used during the allegedly misleading phone calls. American Express therefore seeks to intervene to respond to the allegations involving its conduct. Elouarrak, on the other hand, asserts that American Express is not a debt collector subject to the FDCPA and cannot be liable for any of the claims in the suit.

It is possible for American Express to hold interests directly related to the action even without being subject to liability. Indeed, a federal district court in Pennsylvania hearing a case with similar facts, including the same defendant and proposed intervenor, makes this distinction. *Brown v. Firstsource Advantage, LLC*, No. 17-5760, 2018 WL 4538412, at *2 (E.D. Penn., Sept. 21, 2018) ("The fact that Brown's claim does not directly target American Express does not render its interests insufficient or general."). Therefore, the Court examines American Express's stated interests below.

<u>Maintaining Business and Contractual Relationships with Third-Party Vendors</u>

American Express identifies an interest in its business and contractual relationships with third-party vendors, including Firstsource. According to American Express, Elouarrak's claim that Firstsource conspired with American Express to flout the requirements of the FDCPA directly implicates American Express's business and contractual relationship with Firstsource. Elouarrak responds that his lawsuit does not hinder American Express from contracting with Firstsource or any other third-party vendors. His suit, as he characterizes it, alleges only that Firstsource has failed to comply with the law.

To prevail, the proposed intervenor's interest must be directly related to the question at issue in the lawsuit. *See Wisconsin Educ. Ass'n Council*, 705 F.3d at 658. The key question in this suit is whether Firstsource illegally misrepresented its identity during telephone calls by allegedly claiming to be American Express. The business and contractual relationship between American Express and Firstsource is therefore of direct importance to the question at issue. Moreover, this interest is unique because the right to maintain a contractual relationship with third-party vendors "belongs to" American Express, not Firstsource. American Express faces allegations of wrongdoing arising exclusively out of its relationship with Firstsource. Firstsource, in contrast, is a third-party vendor facing scrutiny for its own actions. As a result, American Express's business and contractual relationship with Firstsource meets the second element of the Rule 24(a)(2) standard.

<u>Ensuring Proper Forum Usage under the Arbitration Agreement</u>

American Express highlights its arbitration agreement with Elouarrak as the source of a protectable interest in arbitrating the current action. Whether American Express has a right to arbitrate this matter is not yet certain, as Elouarrak disputes the arbitrability of his present claims against Firstsource.

4

Nonetheless, American Express has a protectable interest in identifying the proper forum in which to settle Elouarrak's claims, whatever that forum may be. *See Brown*, 2018 WL 4538412, at *2 ("[I]f the arbitration provision of the Cardmember Agreement does govern [this dispute], American Express has a specific interest in ensuring those claims are resolved in its chosen forum."). This interest is directly related to the question at issue, as it determines where that question will be resolved. An interest in arbitration is also unique to American Express. Although both American Express and Elouarrak are parties to the arbitration agreement, Elouarrak claims that the agreement does not apply to the present action. Therefore, the interest in asserting the right to arbitrate "belongs to" American Express. These attributes indicate that American Express's interest in arbitration suffices under the second element of the Rule 24(a)(2) standard.

<u>Resolving Outstanding Accounts and Communicating with Cardholders</u>

American Express articulates an interest in resolving its outstanding accounts by communicating with cardholders, including via settlement offer letters. Elouarrak's alleged debt is on an American Express account, and the Letters are all from "American Express Global Collections." Elouarrak, however, argues that Firstsource's failure to identify itself properly to callers is the basis of the lawsuit. According to Elouarrak, resolving this matter does not implicate American Express's ability to settle its accounts or send letters; it affects only Firstsource's communications.

When dealing with similar facts to the present case, other federal district courts differ regarding whether a creditor has a protectable interest in the practices of a debt collector with whom the creditor has contracted. *Compare Martinez v. Nationwide Credit, Inc.*, No. 17-cv-4968-MCA-LDW (D.N.J. March 22, 2018) (finding that "American Express has a specific interest in the alleged debt owed to it by plaintiff and its Cardholders" and in "the manner" of collecting those debts) *with Abdurahman v. Alltran Fin., LP*, 330 F.R.D. 276, 281 (S.D. Cal. 2018) (ruling in plaintiff's favor would

5

affect defendant debt collector, but "would not affect [the rights of American Express, the proposed intervenor,] to contract with debt collectors or to charge interest, fees, or costs as it sees fit"). In short, the question of whether American Express has an interest in the method by which its third-party vendor collects debts is somewhat murky.

Despite the debate, this interest falters in demonstrating the requisite direct relationship to the issue the case seeks to resolve. The key question here is whether Firstsource's alleged telephone communications violated the FDCPA. The fact that the debt was allegedly incurred upon an American Express account is not directly related to that question. Furthermore, the suit challenges only Firstsource's actions. Regardless of this lawsuit's outcome, American Express's ability to communicate with its cardholders and contract with debt collectors will continue unimpeded within the bounds of the law. These attributes weigh against a finding that American Express's interest in communicating and collecting on accounts suffices under Rule 24(a)(2). Nevertheless, American Express's other identified interests fulfill this element as required under Rule 24(a)(2).

*Potential Impairment of the Interest by the Disposition of the Action*

The parties also dispute the third element of the Rule 24(a)(2) standard, which requires a showing that disposition of the action without the proposed intervenor would potentially impair the proposed intervenor's interest in the subject matter of the action. *Planned Parenthood*, 942 F.3d at 797. "Impairment exists when the decision of a legal question . . . would, as a practical matter, foreclose the rights of the proposed intervenor in a subsequent proceeding." *Shea v. Angulo*, 19 F.3d 343, 347 (7th Cir. 1994) (citation omitted).

American Express's interest in maintaining business and contractual relationships with third-party vendors, including Firstsource, may be impaired by the disposition of the action without American Express's involvement. While American Express remains free to contract as it pleases with third-party vendors, including Firstsource, the details of its relationship with Firstsource may

6

have to change.  For example, if the Court finds that Firstsource's conduct violated the FDCPA, American Express and Firstsource may have to renegotiate portions of their business arrangement to ensure that Firstsource comes into compliance with the law.  Although this outcome is uncertain, the Seventh Circuit's standard calls only for "potential impairment," and the potential effects on American Express's business relationship with Firstsource qualify.

Moreover, American Express's interest in proper forum usage based on its arbitration agreement with Elouarrak would be impaired by the disposition of the action.  American Express argues that this action falls under its arbitration agreement and should not be in federal litigation.  Allowing Elouarrak and Firstsource to litigate without the involvement of American Express would certainly impair American Express's interest in identifying and utilizing the proper forum under the agreement.  American Express has met its burden in fulfilling the third requirement under Rule 24(a)(2).

**Conclusion**

For the foregoing reasons, the Court grants American Express's motion to intervene [23].

**IT IS SO ORDERED.**

Date: 1/21/2020

Entered:_____
SHARON JOHNSON COLEMAN
United States District Judge

7